IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

          Plaintiff,

    v.

MICHAEL GAMBLE,

          Defendant.

2:21-cr-142-CCW

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are six pretrial Motions filed by Defendant Michael Gamble.  For the reasons that follow, Mr. Gamble's Motions will be resolved as follows:[1]

1.     Motion to Produce Evidence the Government Intends to Use under Federal Rules of Evidence 404(b) and 609, *see* ECF No. 62, will be GRANTED IN PART and DENIED IN PART;

2.     Motion to Reveal Identity of Confidential Information, *see* ECF No. 67 (ECF No. 63), will be DENIED;

3.     Motion to Produce Exculpatory Evidence and Impeachment Evidence, *see* ECF No. 68 (ECF No. 64), will be DENIED AS MOOT;

4.     Motion for Severance of Count One from Counts Two and Three, *see* ECF No. 65, will be DENIED;

5.     Motion for Discovery, *see* ECF No. 69, will be DENIED WITHOUT PREJUDICE;  and

6.     Motion to Suppress Evidence and Statements, *see* ECF No. 70 (ECF No. 66), will be DENIED.

---

[1] Due to a number of docketing corrections by defense counsel, some of Mr. Gamble's Motions are associated with more than one ECF Number.  For clarity, the Court here refers to the corrected docket number (if any) first, followed by the original docket number in parentheses.  Subsequent references in this Memorandum Opinion and Order will refer only to the corrected entry number.

## I.     Background

Mr. Gamble is charged by the United States in a three-count indictment with (1) possession with the intent to distribute 40 grams or more of a mixture and substance containing a detectible amount of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(vi) (Count One);  (2) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Two);  and (3) possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (Count Three).  *See* ECF No. 3.

In short, the facts underlying the charges against Mr. Gamble are as follows:

On December 8, 2020, following a pair of controlled purchases of narcotics carried out by a confidential informant ("CI"), Pennsylvania Office of Attorney General law enforcement officers applied for and received a search warrant for the residence at 1029 Rice Avenue in Ambridge, PA, which both the CI and law enforcement's independent investigation determined to be Mr. Gamble's.  *See* ECF No. 70-2.  Pennsylvania Office of Attorney General and Pennsylvania State Police law enforcement officers executed the search warrant on December 10, 2020.  *See* ECF Nos. 70-2 & 70-3 at 1.  Mr. Gamble, his mother, and another woman were present at the time the search warrant was executed;  all three were detained.  *See* ECF 70-3 at 1.  Agents gave Mr. Gamble *Miranda* warnings at the time he was detained.  *See id.*  The investigative report on the execution of the search warrant further notes that the "entry team" located Mr. Gamble in the basement of the residence and observed Mr. Gamble holding a handgun, which he then "threw [] under the couch cushion while the team was making entry to the basement" where Mr. Gamble was located.  *Id.*  In executing the search, law enforcement seized various drugs, drug paraphernalia, a firearm, and cash.  *See* ECF No. 70-2 at 6;  70-3 at 1.  Mr. Gamble admitted that at least some of the drugs and related paraphernalia belonged to him.  *See* ECF No. 70-3 at 1–2.  At the conclusion of the search, Mr. Gamble's mother was released, while Mr. Gamble and his

female associate (who is not indicted in this case) were transported to a local police station.  *See id.* at 1.

After again giving *Miranda* warnings, law enforcement officers learned from Mr. Gamble's associate that "[she] and Gamble had just returned from Philadelphia, PA with one hundred (100) grams of fentanyl and that it was hidden inside of the property."  ECF No. 70-4 at 5.  Confronted with this statement, Mr. Gamble "stated that he and [his associate] did recently get back from Philadelphia where he purchased approximately 100 grams of Heroin/Fentanyl from an individual," ECF No. 70-3 at 5, and further admitted to "Agents that there was more fentanyl located in the property and [he] would show Agents were it was located."  *Id.*  Based on Mr. Gamble's statements and the items seized in the initial search, Pennsylvania law enforcement officers applied for, and received, a second search warrant, which they executed that same day, i.e., December 10, 2020, and which resulted in the seizure of an additional quantity of fentanyl from the residence.  *See* ECF No. 70-4.

Mr. Gamble filed the above-listed Motions on April 25, 2022, the same day his pretrial motions deadline expired.  *See* ECF No. 58.  The United States filed an omnibus response in opposition to the Motions, *see* ECF No. 74, to which Mr. Gamble filed a reply.  *See* ECF No. 78. As such, Mr. Gamble's Motions were fully briefed as of June 21, 2022, and are ripe for disposition.

## II.    Analysis

### A.  Motion to Produce Evidence the Government Intends to Use under Federal Rules of Evidence 404(b) and 609

In his first Motion, Mr. Gamble seeks "an Order requiring the government to provide Mr. Gamble with reasonable notice of any evidence the government plans to offer at trial" under Fed. R. Evid. 1404(b) and 609.  ECF No. 62 at 1.  Specifically, Mr. Gamble asks that the United States be required to provide "a statement containing the nature, dates, and places of occurrences of any

criminal offense or acts of misconduct other than those specified in the Indictment which the government will attempt to prove at trial, and the purpose for which the government will seek to admit such evidence." *Id.* The United States "submits that notice of this evidence three weeks prior to trial is adequate and does not object to such an order." ECF No. 74 at 6. As such, the United States says that "at least three weeks prior to trial, the prosecution will inform the Defendant of 'the general nature of any such evidence' that it intends to admit pursuant to Rule 404(b), as well as provide any required notice under Rules 609(b)." Mr. Gamble, however, contends that the United States should be required to disclose such information 30 days before trial, and that it should be required to specifically describe in its notice "the conduct, place, time, dates, and specific theory of admissibility." ECF No. 78 at 2.

Federal Rule of Evidence 404(b) states, in relevant part, as follows:

(3) Notice in a Criminal Case. In a criminal case, the prosecutor must:

(A) provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it;

(B) articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose; and

(C) do so in writing before trial — or in any form during trial if the court, for good cause, excuses lack of pretrial notice.

Before the 2020 amendment to Rule 404(b), "[t]he rule require[d] only the disclosure of the general nature of the evidence the government intends to introduce." *United States v. Johnson*, 218 F.Supp.3d 454, 461 (W.D. Pa. 2016) (Cercone, J.). Like Rule 404(b), Rule 609(b)(2) requires the proponent of criminal conviction impeachment evidence to "give[] an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use," if more than 10 years have passed since the witness' conviction or release from confinement (whichever is later). In any case, "[w]hat constitutes 'reasonable notice in advance of trial' is

determined by the circumstances and complexity of the prosecution." *Johnson*, 218 F.Supp.3d at 462.

Having reviewed and considered the parties' positions, the Court will GRANT IN PART and DENY IN PART Mr. Gamble's Motion at ECF No. 62.  First, the Court is not persuaded that the "circumstances and complexity of the prosecution" here warrant requiring notice to be given 30 days before trial, given that Mr. Gamble is the sole defendant and is charged with crimes stemming from two searches executed on his alleged residence on the same day.  As such, to the extent Mr. Gamble seeks to require the United States to provide notice under Rules 404(b) and 609 at least 30 days before trial, that request will be DENIED.  Instead, the Court will require any such notice to be given at least 21 days before trial.

That said, the Court agrees with Mr. Gamble that, following the 2020 amendment to Rule 404(b), more is required of the prosecution than simply the "disclosure of the general nature of the evidence." *Johnson*, 218 F.Supp.3d at 261;  *see also United States v. Coles*, 511 F.Supp.3d 566, 593 (M.D. Pa. 2021) (noting that, under Rule 404(b), "[t]he notice must be in writing and must articulate the permitted purpose for which the government seeks to offer the evidence."). Accordingly, Mr. Gamble's Motion will be GRANTED to the extent that, in its Rule 404(b) notice, the United States shall describe the evidence with reasonable particularity "so that the defendant has a fair opportunity to meet it" and must "articulate…the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose."  Fed. R. Evid. 404(b).

### B.  Motion to Reveal Identity of Confidential Informant

Mr. Gamble's second Motion seeks an order requiring the United States to disclose the identity of the Confidential Informant ("CI") who conducted the controlled purchases on behalf of law enforcement that were part of the basis for the relevant search warrants.  *See* ECF No. 67.  Mr.

Gamble argues that "he will be unduly prejudiced if the confidential informant's identity is not given prior to trial, as the confidential informant's identity and an opportunity to litigate the Motion to Suppress and to investigate is essential to his defense and to a fair determination of the case against him." *Id.* at 2.  In opposition, the United States maintains that (1) Mr. Gamble has "failed to meet his burden to overcome the qualified 'informer's privilege," and (2) disclosure is not necessary because "the prosecution does not intend to present the confidential informant at either a suppression hearing or trial" because "[t]he evidence supporting Counts One through Three is substantial and based upon law enforcement's observations, the recovery of a firearm and fentanyl near or on the defendant, and the defendant's admissions."  ECF No. 74 at 11.

Although the government has a well-established right to withhold the identity of informants, "[t]his qualified privilege…must give way '[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause.'"  *United States v. Noble*, No. 1:17cr00005, 2018 U.S. Dist. LEXIS 161139, at *3 (W.D. Pa. Sep. 20, 2018) (Cercone, J.) (quoting *Roviaro v. United States*, 353 U.S. 53, 60–61 (1957)).  In ruling on a request for disclosure such as Mr. Gamble's, the Court must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense."  *Roviaro,* 353 U.S. at 62.  "The result of the balancing will depend upon the particular circumstances of the case, 'taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.'"  *United States v. Jiles*, 658 F.2d 194, 196 (3d Cir. 1981) (quoting *McCray v. Illinois*, 386 U.S. 300, 311 (1967)).  That said, the defendant "bears the burden of showing a specific need for disclosure" of the CI's identity.  *United States v. Stanton,* 566 F. App'x 166, 168 (3d Cir. 2014) (citing *Jiles*, 658 F.2d at 197).

As to making a showing of "specific need," the United States Court of Appeals for the Third Circuit has provided guidance on the sort of rationales that are insufficient to require disclosure. First, "'[m]ere speculation as to the usefulness of the informant's testimony to the defendant is insufficient to justify disclosure of his identity.'" *Stanton*, 566 F. App'x at 168 (quoting *United States v. Bazzano*, 712 F.2d 826, 839 (3d Cir. 1983)). Furthermore, "[w]hen a confidential informant's involvement in a case merely goes to probable cause for a search, as is the case here, 'disclosure of his identity is not required.'" *United States v. Pitts*, 655 F. App'x 78, 81 (3d Cir. 2016) (quoting *Bazzano*, 712 F.2d at 839). Finally, "when disclosure is sought 'in the hope' that it 'will lead to evidence that will help [a defendant] make a *Franks* showing[,]' the '*Roviaro* balance will tend to tip against disclosing the informant's identity.'" *Stanton*, 566 F. App'x at 168 (quoting *United States v. Brown*, 3 F.3d 673, 679 (3d Cir. 1993)).

Here, Mr. Gamble offers nothing more than speculation and conjecture as to how the identity of the CI is relevant to anything other than the determination of probable cause underlying the initial search warrant in this case. For example, Mr. Gamble suggests that disclosure is warranted because "[t]he identity of the confidential informants [sic] along with the lack of corroborating information is critical to the pending suppression motion in this case" and that "he will be unduly prejudiced if the confidential informant's identity is not given prior to trial as the confidential informant's identity and an opportunity to litigate the Motion to Suppress and to investigate is essential to his defense and to a fair determination of the case against him." ECF No. 67 at 1–2. In other words, Mr. Gamble's position is not that the CI's identity is specifically needed to support a defense as to any of the charges against him. Rather, Mr. Gamble claims that he needs the CI's identity to challenge the constitutionality of the search that led to the evidence of the crimes with which he has been charged. This is not enough to tip the balance in favor of

disclosure. *See Pitts*, 655 F. App'x at 81. As such, Mr. Gamble has not met his burden and the Motion to Reveal Identity of Confidential Informant, ECF No. 67, will be DENIED.

### C.  Motion to Produce Exculpatory Evidence and Impeachment Evidence

Mr. Gamble's third Motion seeks production of exculpatory and impeachment evidence pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and *United States v. Giglio*, 405 U.S. 150 (1972). *See* ECF No. 68. Although Mr. Gamble's motion describes certain categories of *Brady* and *Giglio* materials, the Court notes that he does not identify any particular evidence that he believes is in the United States' possession but that the United States has not yet produced. *See id.*

The United States responds that this motion should be denied as moot because the United States is aware of its obligations and responsibilities under *Brady*, 373 U.S. 83 (1963), "has already provided and intends to continue to provide whatever actual exculpatory information may exist and has not already been disclosed and, with respect to impeachment evidence, to do so sufficiently in advance of trial for the Defendant to make effective use of it," and will adhere to any Court-imposed pretrial deadlines regarding the disclosure of witness and exhibit lists and production of *Giglio* information. ECF No. 74 at 16–18 (citing *United States v. Higgs*, 713 F.2d 39, 44 (3d Cir. 1983) ("No denial of due process occurs if *Brady* material is disclosed . . . in time for its effective use at trial.") (citations omitted)).

In *Brady*, the Supreme Court held that due process requires the disclosure of "evidence favorable to an accused upon request . . . where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). "Evidence which may be used to impeach the testimony of a government witness falls within the ambit of *Brady* when the credibility of the witness may have an effect on the jury's determination of guilt or innocence." *United States v. Beech*, 307 F.R.D. 437, 441 (W.D. Pa. 2015) (Cercone,

J.); *see also United States v. Starusko*, 729 F.2d 256, 260 (3d Cir. 1984). In *Giglio*, the United States Supreme Court "extended its ruling in *Brady* to encompass impeachment evidence relating to the credibility of a government witness." *United States v. Portis*, No. 19-133-7, 2020 U.S. Dist. LEXIS 226975 (W.D. Pa. Dec. 3, 2020) (Horan, J.) (citing *Giglio v. United States*, 405 U.S. 150, 154 (1972)).

The prosecution has an obligation to disclose *Brady* material "in time for its effective use at trial." *Beech,* 307 F.R.D. at 441–42 (citing *Higgs*, 713 F.2d at 44). In this case, the prosecution has acknowledged its obligations and responsibilities with respect to *Brady* and its progeny, has represented that it has complied with and continues to comply with such obligation, and has further agreed to comply with any pretrial order that this Court may impose. ECF No. 74 at 16–18.

The Court has not yet set this case for trial, but will set a deadline for the disclosure of *Brady/Giglio* material in its pretrial order. As such, Mr. Gamble's Motion at ECF No. 68 is premature and will, therefore, be DENIED AS MOOT.

### D. Motion for Severance of Count One from Counts Two and Three

Mr. Gamble's fourth Motion seeks to have Count One severed from Counts Two and Three. *See* ECF No. 65 ¶ 5 ("Severance is warranted under Federal Rule of Criminal Procedure 14 because Mr. Gamble will be severely and unduly prejudiced if he is compelled to stand trial on Count One together with Counts Two and Three."). In short, Mr. Gamble contends that evidence of prior felony convictions—a necessary element underlying Count Three—will inevitably taint the jury's consideration of the drug-trafficking charge (Count One) and "to the extent that Counts Two and Three are both firearm-related and depend on overlapping evidence, judicial economy supports those charges being tried together separate from Count One." *Id.* Mr. Gamble further notes that "[c]ourts have consistently recognized the prejudice created by § 922(g) [Count Three, possession of a firearm and ammunition by a convicted felon] prosecutions that are joined with

other felony offenses" such as the drug trafficking and other firearm-related offenses with which he is charged.  *Id.* ¶ 12 (citations omitted).

The United States opposes severance because Mr. Gamble "is charged with multiple offenses that are based upon the same act or transaction and are connected together as part of a common scheme or plan."  *See* ECF No. 74 at 6;  *see also id.* at 14–15 (arguing that Mr. Gamble cannot meet his burden because severance is not warranted where, as here, "evidence from one offense is relevant to other offenses charged.") (citing *United States v. McNeill*, Criminal No. 06-373, 2007 U.S. Dist. LEXIS 56209, at *8 (W.D.Pa. Aug. 2, 2007) (Diamond, J.) ("In cases where 'evidence of each of the joined offenses would be admissible in a separate trial for the other', concerns about cumulation of evidence and inference of a criminal disposition are 'largely absent.'") (other citations omitted)).  The Court finds that Mr. Gamble's assertions that the jury's consideration of the evidence related to Count One would necessarily be tainted if evidence of his prior convictions (related to Count Three) is admitted are insufficient to warrant severance.  *See United States v. Riley,* 621 F.3d 312, 335 (3d Cir. 2010) ("A defendant must 'pinpoint clear and substantial prejudice resulting in an unfair trial' to justify severance) (quoting *United States v. McGlory*, 968 F.2d 309, 340 (3d Cir. 1992)).  Accordingly, the Court will DENY Mr. Gamble's Motion for Severance, ECF No. 65.

Although opposing severance, the United States proposes that Mr. Gamble's "concerns that he would be prejudiced by the introduction of evidence regarding his criminal history would be adequately addressed by bifurcating the trial in the manner recommended by the Third Circuit's Model Jury Instructions," specifically Third Circuit Model Jury Instructions (Criminal) § 6.18.922G-1.  That procedure would have the jury first consider evidence as to Counts One and Two, and answer special interrogatories as to whether Mr. Gamble knowingly possessed a firearm

and whether that possession was in or affecting interstate commerce; if, and only if, the jury found

for the prosecution on the special interrogatories would the jury then consider evidence concerning

Mr. Gamble's criminal history. *See* ECF No. 74 at 15–16; *see also* Third Circuit Model Jury

Instructions (Criminal) § 6.18.922G-1 (Alternative 1). Mr. Gamble does not endorse the United

States' proposed bifurcation procedure,[2] but nonetheless appears to agree that some form of

bifurcated trial may be sufficient to eliminate the potential for prejudice inherent to trying a felon-

in-possession charge with other charges. *See* ECF No. 78 at 6. The Court further notes that the

Third Circuit Model Jury Instructions (Criminal) contemplate more than one way to bifurcate a

multi-count trial involving an alleged violation § 922(g), and also provide for appropriate limiting

instructions for use in a case where bifurcation is not ordered. *See* Third Circuit Model Jury

Instructions (Criminal) §§ 6.18.922G–6.18.922G-3 (describing other appropriate preliminary and

mid-trial instructions to be given).

As such, the Court finds that bifurcation of the trial is appropriate in this case, and will

ORDER that at trial, Count Three will be bifurcated from Counts One and Two. The parties will,

therefore, at the appropriate time, and after meeting and conferring on pretrial matters, submit

---

[2] The Court notes that Mr. Gamble's opposition to the United States' bifurcation proposal appears to be based on a misreading of *United States v. Jacobs*, 44 F.3d 1219 (3d Cir. 1995). Mr. Gamble argues that in *Jacobs* the Third Circuit rejected bifurcation of a § 922 charge "as to its *elements*." *See* ECF No. 78 at 5–6 (citing *Jacobs*, 44 F.3d at 1222). But Mr. Gamble has overlooked that the defendant in *Jacobs* was charged in a one-count indictment; that is, the only charge in play was for alleged violation of § 922(g). *See Jacobs*, 44 F.3d at 1222. Indeed, the comments to Third Circuit Model Jury Instruction § 6.18.922G-1 expressly account for this fact. *See* § 6.18.922G-1 cmt. at 24, "Bifurcation" ("A defendant who is charged only with violating § 922(g) is not entitled to bifurcation of the issues.") (citing *Jacobs,* 44 F.3d 1219 and *United States v. Higdon*, 493 F. App'x 261 (3d Cir. 2012)). In *Higdon*, the Third Circuit explained that the ruling in *Jacobs* was based, in part, on the conclusion that bifurcating a single count as to its elements could cause unnecessary confusion. *See Higdon*, 493 F. App'x at 263 ("It would cause undue confusion to have a jury first determine whether Higdon in fact possessed the firearm. A reasonable juror would properly question why Higdon's possession was criminal."). Such a concern is entirely moot as to the United States' proposed bifurcation procedure because whether Mr. Gamble knowingly possessed a firearm, and whether such possession was in or affecting interstate commerce, are also elements of Count Two. Furthermore, evidence that Mr. Gamble possessed a firearm may, in any event, be admissible as collateral evidence to prove the drug-trafficking charge in Count One. *See United States v. Goodnight*, 67 F. App'x 677, 681 (3d Cir. 2003) ("[G]un possession may serve as circumstantial evidence from which a jury can infer drug activity."). In other words, the Court is not persuaded that that the bifurcation procedure proposed by the United States, and contemplated under the Third Circuit Model Jury Instructions, is contrary to *Jacobs*.

proposed jury instructions for a bifurcated trial along with any appropriate stipulations.  Whether to bifurcate along the lines proposed by the United States, or to use another method contemplated by the Third Circuit Model Jury Instructions, the Court will leave to the parties to attempt to reach agreement on in the first instance.

### E.  Motion for Discovery

Mr. Gamble has also filed a Motion seeking production of various categories of documents and information pursuant to Federal Rule of Criminal Procedure 16.  *See, generally,* ECF No. 69. As with Mr. Gamble's other discovery-related requests, *see, e.g.*, ECF No. 68, Mr. Gamble does not identify any specific shortcoming in the prosecution's productions to date.  *See* ECF No. 69. In response, the United States acknowledges its discovery obligations, has described substantial material already produced and/or made available to Mr. Gamble and his counsel, and affirms that it will continue to make productions as required.  *See* ECF No. 74 at 18–21.  In his Reply, Mr. Gamble "stands by the requests he made," but the Court notes this position appears to be mainly aimed at formally notifying the United States of categories of information Mr. Gamble expects to receive in discovery so as to lay the foundation for potential motions *in limine* "[s]hould the government make late-in-the-game productions of relevant material."  ECF No. 78 at 9.  In other words, the Court is unable on the present record to determine whether an order requiring production of specified materials is warranted and, as such, Mr. Gamble's Motion for Discovery will be DENIED WITHOUT PREJUDICE AS PREMATURE.

### F. Motion to Suppress Evidence and Statements

Finally, Mr. Gamble seeks the suppression of evidence gathered and statements made in connection with the two searches conducted of his residence on December 10, 2020. *See* ECF No. 70. In short, Mr. Gamble posits that the affidavit supporting the first search warrant was not supported by probable cause and, as such, all of the evidence gathered, including statements made by Mr. Gamble to law enforcement officers, should be suppressed. *See id.* at 1. Mr. Gamble "requests that this Court hold a hearing to understand how the events leading to the search warrant unfolded and asserts that such a hearing will establish that the warrant lacked probable cause." *Id.* In particular, Mr. Gamble argues that firearm evidence should be suppressed because the affidavit offers nothing more than boilerplate assertions regarding "the relationship between drug traffickers and firearms generally" without making any "averments at all regarding Mr. Gamble specifically vis-à-vis firearms." *Id.* at 9 (citations omitted). Next, in addition to arguing that his statements to police "must be suppressed as the fruit of the illegal search of the Rice Avenue residence," *id.* at 12, Mr. Gamble also argues that the statements he made to police must be suppressed because they were "coerced," and that if afforded a hearing, "Mr. Gamble will present evidence that the police's questioning of him was coercive and that his will was overborne when the officers confronted him with incriminating statements allegedly made by a third party who was arrested at the same time as Mr. Gamble." *Id.* at 14.

### 1. No Hearing on Mr. Gamble's Suppression Motion is Required Here

As an initial matter, the Court finds that Mr. Gamble has not met his burden to demonstrate that a hearing on his suppression motion is warranted. Evidentiary hearings on motions to suppress are not granted as a matter of course. *See* Fed. R. Crim. P. 12(c)(1). In evaluating whether a motion to suppress requires an evidentiary hearing, the Third Circuit has established that an

evidentiary hearing is required only "if the motion is sufficiently specific, non-conjectural, and detailed to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome of the motion to suppress." *United States v. Hines*, 628 F.3d 101, 105 (3d Cir. 2010). Ultimately, a suppression hearing is warranted where it will "assist the court in ruling upon a defendant's specific allegations of unconstitutional conduct—its purpose is not to assist the moving party in making discoveries that, once learned, might justify the motion after the fact." *Id.*

First, as to whether the first search warrant was supported by probable cause, Mr. Gamble has not identified any disputed issue of material fact that will affect the outcome of the present Motion. According to Mr. Gamble, the affidavit fails to establish probable cause because there were two individuals other than Mr. Gamble at or using the residence besides him and because there is nothing in the affidavit to corroborate the CI's report that it was Mr. Gamble who sold the drugs during the controlled purchases rather than either of the other two individuals. *See* ECF No. 70 at 6–8. But—and as discussed in more detail below—the presence (or absence) of others at the residence is not outcome-determinative because the other information provided in the affidavit supporting the first search warrant gave the issuing magistrate "a 'substantial basis' for concluding that the affidavit supporting the warrant established probable cause." *United States v. Miknevich*, 638 F.3d 178, 181 (3d Cir. 2011) (quoting *United States v. Jones*, 994 F.2d 1051, 1054–55 (3d Cir. 1993)); *see also United States v. Burton*, 288 F.3d 91, 104 (3d Cir. 2002) (probable cause established to search residence of alleged drug trafficker where affidavit established "three preliminary premises (1) that the person suspected of drug dealing is actually a drug dealer; (2) that the place to be searched is possessed by, or the domicile of, the dealer; and (3) that the home contains contraband linking it to the dealer's drug activities.").

Next, although Mr. Gamble is correct that the affidavit does not specifically describe facts linking a firearm to him, his challenge to the firearm evidence does not rest on any dispute of fact but instead turns on what he contends are deficiencies within the four corners of the affidavit supporting the warrant. *See* ECF No. 70 at 9 ("Here, the warrant lacks probable cause with respect to any firearms-related evidence because, aside from some perfunctory boilerplate recitation about the relationship between drug traffickers and firearms generally…it contains no averments at all regarding Mr. Gamble specifically vis-à-vis firearms."). As such, no hearing on Mr. Gamble's Motion to Suppress with respect to the firearm related evidence is warranted.

Finally, aside from referring to law enforcement confronting him with the (uncontroverted) statements of the third party who was also arrested after the initial search of the residence on December 10, 2020, Mr. Gamble provides no factual support for his contention that his statements were coerced, instead offering only vague assurances that such evidence would be presented at a hearing. *See* ECF No. 74 ("At the hearing, Mr. Gamble will present evidence that the police's questioning of him was coercive and that his will was overborne"); *see also* ECF No. 78 ("[I]t is unclear that there necessarily would be anything in the record to document such coercion. It stands to reason, in other words, that there would not be."). Facts related to coercive tactics used by police during Mr. Gamble's interrogation are within Mr. Gamble's possession—he was, after all, on the receiving end of such allegedly coercive techniques; that he has not offered any undermines his request for a hearing on that issue. For example, although he contends that "his will was overborne when officers confronted him with incriminating statements" made by the third party who was also arrested on December 10, 2020, Mr. Gamble offers no information as to how or why this was the case. Furthermore, the United States does not dispute that law enforcement officers did, in fact, confront Mr. Gamble with incriminating statements made by the third party. *See* ECF

No. 74 at 35 (arguing that "law enforcement did not mislead the defendant when sharing the incriminating statement because it was a true statement.  Indeed, the defendant agreed with the incriminating statement shared by law enforcement.").  As such, with no material factual dispute as to the use of the third party's statement, and no other factual allegations related to coercive tactics put forward by Mr. Gamble, no hearing is warranted on the issue of whether his statements were coerced.

In sum, Mr. Gamble has not pointed to any dispute of material fact that would affect the outcome of his suppression motion, and, therefore, no hearing is necessary or warranted here.  Accordingly, Mr. Gamble's request for a hearing will be DENIED and the Court will resolve the suppression motion on the parties' filings and the present record.

> **2.    The Issuing Magistrate Had a "Substantial Basis" to Conclude the Affidavit Underlying the First Search Warrant Application Established Probable Cause**

A federal court reviewing a warrant executed by state officers in the context of a federal prosecution must simply determine whether the warrant conforms to the Fourth Amendment of the United States Constitution.  *See United States v. Stiver*, 9 F.3d 298, 301 (3d Cir. 1993).  The Fourth Amendment forbids "unreasonable searches and seizures" and mandates that "no Warrants shall issue, but upon probable cause."  U.S. Const. amend. IV.  There is probable cause under the Fourth Amendment when the issuing authority, in considering the "totality-of-the-circumstances," makes a "practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him [or her] ... there is a fair probability that contraband of evidence of a crime will be found in a particular place." *United States v. William*s, 124 F.3d 411, 420 (3d Cir. 1997) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

In reviewing the issuing authority's determination of probable cause, this Court undertakes a deferential review that is limited to determining whether the issuing authority "had a 'substantial

basis' for concluding that the affidavit supporting the warrant established probable cause." *Miknevich*, 638 F.3d at 181 (quoting *Jones*, 994 F.2d at 1054–55).  Doing so, the Court considers only "the facts that were before the [issuing authority], i.e., the affidavit, and do[es] not consider information from other portions of the record," and the "resolution of any doubtful or marginal cases" should be "largely determined by the preference to be accorded to warrant."  *Miknevich*, 638 F.3d at 181–82 (quoting *Jones*, 994 F.2d at 1055, 1057–58);  *see also United States v. Whitner*, 219 F.3d 289, 296 (3d Cir. 2000) (confining the court's review to "whether the information within the four corners of the affidavit established probable cause").

Mr. Gamble argues that "suppression of all the evidence seized from the Rice Avenue residence is required because the affidavit fails to establish any 'nexus' to that address – it does not establish probable cause to believe that there was evidence of a crime at the residence."  ECF No. 70 at 5 (citing *United States v. Kahn*, 415 U.S. 143, 155 n.15 (1974) (warrant to search for items reasonable "only when there is 'probable cause' to believe that they will be uncovered in a particular dwelling."))  More specifically, Mr. Gamble contends that "the affidavit relies on the word of an unidentified CI to suggest that Mr. Gamble was doing something illegal inside the residence and this is insufficient to support probable cause" because (1) the CI was the only person who allegedly witnessed Mr. Gamble sell drugs and (2) Mr. Gamble was not the only person using or residing at the subject residence.  ECF No. 70 at 5–8.

The Court disagrees.  Having reviewed the application and supporting affidavit for the first search warrant, the Court concludes that the issuing magistrate had a substantial basis to conclude the affidavit established probable cause.  First, contrary to Mr. Gamble's argument that there was an insufficient "nexus" with the subject residence, the affidavit (1) confirms Mr. Gamble's use of the residence through both the CI's statements and independent police investigation and (2)

describes in detail two controlled purchases of drugs carried out by the CI at the residence.  *See* ECF No. 70-2 at 3–4.  In both of these controlled purchases, law enforcement officers searched the CI for drugs and money prior to the controlled purchase, gave the CI pre-recorded funds with which to make the purchase, followed the CI to the dwelling, observed the CI enter and exit the residence, and then followed the CI to a debriefing location where the CI turned over drugs he/she stated he/she had purchased from Mr. Gamble.  *See id.*  In other words, when the CI entered the residence—which, again, both the CI and independent police work confirmed was Mr. Gamble's— the CI did not have any drugs.  When the CI exited the residence, the CI had drugs.  Moreover, the second controlled purchase was within two days of the date officers submitted the affidavit and warrant application.  *See id.* at 4.  These factual claims in the affidavit are more than enough to establish a "nexus" between the residence and the alleged criminal activity.

Next, while Mr. Gamble dismisses some of the information provided in the affidavit as mere "boilerplate" regarding the affiants' law enforcement experience and training, the Court notes that such experience and training is relevant and may be relied upon as part of an issuing magistrate's probable cause determination.  *See United States v. Nyamekye,* Nos. 20-2129, 20-2615, 2022 U.S. App. LEXIS 2966, at *3 (3d Cir. Feb. 2, 2022) (affirming finding of probable cause based in part on "training and experience" of the affiant) (citing *United States v. Stearn*, 597 F.3d 540, 560 (3d Cir. 2010) (noting nexus between home and evidence may be established by, for example, "conclusions of experienced officers")).  Based on that training and experience, the affiants informed the magistrate, for example, that "it is common for drug traffickers and users to store controlled substances at their residences" and that "the enterprise of trafficking in controlled substances is often violent and in order to protect themselves and their supply of controlled substances and or Currency, it is common for drug traffickers to keep firearms in their residences,

vehicles and on their persons." ECF No. 70-2 at 5. The magistrate was entitled to rely on such statements when making his probable cause determination, including the affiants' determination that they "deemed [the CI] reliable." *See, e.g.*, *Stearn*, 597 F.3d at 560; *see also United States v. Whitner*, 219 F.3d 289, 296 (3d Cir. 2000) (noting that "'[t]he issuing judge or magistrate may give considerable weight to the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense.'" (citation omitted)).

Finally, as to Mr. Gamble's challenge to the CI's credibility, the Court concludes that the affidavit was supported by more than "bare conclusory assertions by the affiant of the reliability and veracity of the informant[]," but instead that "'independent police work' substantially corroborate[d] the information of [the] confidential informant," thereby "'providing the requisite substantial basis for [the] magistrate's finding of probable cause." *United States v. Williams*, 974 F.3d 320, 351 (3d Cir. 2020) (citations omitted). In reaching this conclusion, the Court looks to the totality of the circumstances and reads the affidavit supporting the first search warrant in a "common sense and nontechnical manner." *United States v. Sangster,* No. 19-3273, 2021 U.S. App. LEXIS 20958, at *5 (3d Cir. July 15, 2021) (citation omitted).

The affidavit establishes that the CI (1) was warned that providing false statements could result in a criminal prosecution against him/her; (2) named Mr. Gamble as one of his/her sources of narcotics; (3) identified Mr. Gamble from an unmarked color photograph; (4) independently identified Mr. Gamble's address; and (5) participated in two separate controlled buys of drugs at the subject residence, reportedly from Mr. Gamble. *See* ECF No. 70-2 at 3–5. Law enforcement corroborated details provided by the CI, including establishing Mr. Gamble's association with the

subject residence through both state records searches and surveillance of the residence in November 2020.  *See id.*  Furthermore, the controlled buys described in the affidavit are sufficient to corroborate the confidential informant's information.  *United States v. Sanchez*, 246 F. App'x 803, 806 (3d Cir. 2007) (noting that caselaw has determined that a "closely supervised and controlled purchase of narcotics establishes ample probable cause to search a residence").  In sum, then, the affidavit sufficiently establishes each of the "three preliminary premises" set forth in *Burton* needed to establish probable cause to search the residence of an alleged drug trafficker, namely "(1) that the person suspected of drug dealing is actually a drug dealer; (2) that the place to be searched is possessed by, or the domicile of, the dealer; and (3) that the home contains contraband linking it to the dealer's drug activities."  *Burton*, 288 F.3d at 104.

Mr. Gamble, in challenging the magistrate's determination, narrowly focuses on specific asserted gaps in the record—in particular, that only the CI allegedly observed Mr. Gamble sell narcotics—however, the totality of the circumstances, including independent corroboration of specific details and two controlled purchases, are sufficient for the issuing magistrate to have a had a "substantial basis" to conclude that probable cause existed to issue a search warrant for the residence and Mr. Gamble.  *See Stearn,* 597 F.3d at 554 ("When presented with an application for a search warrant, the magistrate must 'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'") (citation omitted).  Accordingly, Mr. Gamble's Motion to Suppress, to the extent it contends the first search warrant was unsupported by probable cause, will be DENIED.

**3.    Probable Cause Existed to Search for Firearms;  Seizure of the Firearm Was Also Proper under the Plain View Exception to the Warrant Requirement**

Next, Mr. Gamble argues that the affidavit supporting the first search warrant "contains no averments at all regarding Mr. Gamble specifically vis-à-vis firearms.  The warrant is therefore insufficiently particular as to firearms and, at the very least, the Court should therefore suppress any firearm-related evidence seized from the Rice Avenue address."  ECF No. 70 at 9.  The Court disagrees.

The warrant application identifies "weapons/firearms…used in the trafficking of controlled substances or the defense thereof" as items to be seized and states that, based on the affiants' training and experience, "the enterprise of trafficking in controlled substances is often violent and in order to protect themselves and their supply of controlled substances and or Currency, it is common for drug traffickers to keep firearms in their residences, vehicles and on their persons."  ECF No. 70-2 at 1, 5.  Furthermore, courts in this Circuit and elsewhere have long recognized that firearms and other weapons are among the "tools of the trade" of drug traffickers.  *See United States v. Price,* 13 F.3d 711, 719 (3d Cir. 1994) (noting "that possession of weapons is 'highly probative of the large scale of a narcotics distribution conspiracy and the type of protection the conspirators felt they needed to protect their operation.'") (citation omitted) (collecting cases);  *see also United States v. Goodnight,* 67 F. App'x 677, 681 (3d Cir. 2003) (noting "gun possession may serve as circumstantial evidence from which a jury can infer drug activity.") (citing *United States v. Russell*, 134 F.3d 171, 183 (3d Cir. 1998) ("it has long been recognized that firearms are relevant evidence in the prosecution of drug-related offenses, because guns are tools of the drug trade."). The reverse of what the courts in *Price, Goodnight,* and *Russell* found is also obviously true;  that is, if possession of guns is circumstantial evidence of drug trafficking activity, then certainly it is fair to infer from evidence of drug trafficking activity that an individual may possess weapons.  As

such, given the ample indicia of drug trafficking activity connected to the subject residence—especially the two controlled purchases—the issuing magistrate had a "substantial basis" to infer that there was a fair probability firearms would be found there.

Furthermore, there does not appear to be any dispute that Mr. Gamble "was seen by the entry team holding the High Point 9mm handgun and threw it under the couch cushion while the team was making entry to the basement."  ECF No. 70-3 at 1.  In short, because (1) the police were executing a lawful search of the residence;  (2) the firearm was in plain view when law enforcement entered the basement;  and (3) Mr. Gamble was a known felon, the discovery and seizure of the firearm in this case fall under the plain view exception to the warrant requirement.  *See United States v. Smith,* 62 F. App'x 419, 423 (3d Cir. 2003) (finding that "since the warrant was valid, police could properly seize the disputed evidence because it was in plain view of the officers.  The officers were legally at the location of the discovery, and the incriminating nature of the evidence was obvious because they knew he could not legally possess firearms.  Therefore, the rifles were admissible even if their discovery was not inadvertent.") (citing *United States v. Scarfo*, 685 F.2d 842, 845 (3d Cir. 1993) and *Horton v. California*, 496 U.S. 128, 136-37 (1990)).

As such, to the extent Mr. Gamble seeks suppression of the firearm related evidence, his Motion will be DENIED.

### 4.      Mr. Gamble's Statements Were Not Coerced

Finally, Mr. Gamble contends that the statements he made to law enforcement, both at the time of the initial search and later at the police station, should be suppressed because they were "coerced."  *See* ECF No. 70 at 13–14.  As noted above, Mr. Gamble does not present any specific evidence or argument to support this contention, aside from stating that "his will was overborne

when the officers confronted him with incriminating statements allegedly made by a third party who was arrested at the same time as Mr. Gamble." ECF No. 70 at 14.

"The Government has the burden to prove, by a preponderance of the evidence, that [an individual's] statements were voluntary—that is, 'the product of an essentially free and unconstrained choice.'" *United States v. Ludwikowski*, 944 F.3d 123, 135 (3d Cir. 2019) (quoting *United States v. Swint*, 15 F.3d 286, 289 (3d Cir. 1994)). In making this determination, "the court must consider the effect that the totality of the circumstances had upon the will of the defendant." *Miller v. Fenton,* 796 F.2d 598, 604 (3d Cir. 1986) (collecting cases). This requires "a court to 'consider the specific tactics utilized by the police in eliciting the admissions, the details of the interrogation, and the characteristics of the accused.'" *Halsey v. Pfeiffer,* 750 F.3d 273, 303 (3d Cir. 2014) (quoting *Miller*, 796 F.2d at 604). Factors courts in this Circuit have considered include, "the youth of the accused; his lack of education or his low intelligence; the lack of any advice to the accused of his constitutional rights; the length of detention; the repeated and prolonged nature of questioning; and the use of physical punishment such as the deprivation of food or sleep." *Id.* (quoting *Miller,* 796 F.2d at 604). The Third Circuit has also said that "a court should consider the suspect's familiarity with the criminal justice system." *Id.* at 303–04. Ultimately, however, while "the line between proper and permissible police conduct and techniques and methods offensive to due process is, at best, a difficult one to draw, particularly . . . where it is necessary to make fine judgments as to the effect of psychologically coercive pressures and inducements on the mind and will of an accused," *id.* at 304, "[t]here can be no involuntary confession absent 'coercive police activity.'" *Ludwikowski*, 944 F.3d at 135 (quoting *United States v. Jacobs*, 431 F.3d 99, 108 (3d Cir. 2005)).

Here, the record amply supports the conclusion that Mr. Gamble's statements to police were not coerced.  Looking to the *Miller* factors, the Court notes that Mr. Gamble was about 35 years old at the time he made the statements on December 10, 2020, *see* ECF No. 70-2 (warrant application noting Mr. Gamble's date of birth as May 10, 1985).  There is nothing in the record to suggest that Mr. Gamble lacks education or is of low intelligence.   Mr. Gamble received appropriate *Miranda* warnings before his initial statements to police at the residence immediately following the search and again before his statements to law enforcement at the police station.  *See* ECF No. 70-3 at 1;  ECF No. 70-4 at 5.  Indeed, Mr. Gamble initialed and signed a detailed, written "Notification of Miranda Rights and Wavier" before providing his statement to investigators at the police station.  *See* ECF No. 74-1.  The questioning does not appear to have been overly prolonged—indeed, the first search warrant was executed at approximately 6:10 a.m. on December 10, 2020, and by 9:15 a.m. law enforcement officers had obtained the second search warrant for the residence, the affidavit in support of which included Mr. Gamble's statements to police.  *See* ECF No. 70-3 at 1;  ECF No. 70-4 at 1.  Nor is there anything in the record to suggest that police used physical punishments to obtain Mr. Gamble's statements, nor has Mr. Gamble alleged that they did.  Finally, the Court notes that Mr. Gamble is well acquainted with the criminal justice system, given his prior felony convictions.  *See* ECF No. 74 at 35 (noting, for example, that Mr. Gamble's "criminal history qualifies him as both a Career Offender under U.S.S.G. § 4B1.1(a) and an Armed Career Criminal under 18 U.S.C. § 924(e)).

Finally, there is nothing in the record to suggest that police confronting Mr. Gamble with the third party's incriminating statement was impermissibly coercive.  While it is true that "an involuntary confession may result from psychological, as well as physical coercion," *Miller*, 796 F.2d at 603, "a confession is not rendered involuntary simply because the police procured it by

24

using psychological tactics." *Halsey*, 750 F.3d at 304 (citation omitted).  Indeed, even "lies told by the police do not necessarily make a confession involuntary; rather this is simply one factor to consider out of the totality of the circumstances." *United States v. Velasquez*, 885 F.3d 1076, 1088 (3d Cir. 1989).  Here, it does not appear that the police resorted to tactics such as lying;  rather, the extent of the psychological pressure put on Mr. Gamble appears to have been relaying to him the third party's apparently true statement that "her [sic] and Gamble had just returned from Philadelphia, PA[,] with one hundred (100) grams of fentanyl and that it was hidden inside the property."  ECF No. 70-4 at 5.  Mr. Gamble does not contend that this statement was false, nor does he allege that investigators made any threats or promises in connection with relaying this statement to him.  Indeed, according to the police report and second warrant application, it appears that Mr. Gamble conceded that the third party's statement was true.  *See* ECF No. 70-3 at 2 ("Gamble did admit that there was in fact approximately 100 grams of additional Heroin/Fentanyl inside the residence in a hidden location in the basement");  ECF No. 70-4 at 5 ("Gamble was then asked about the Fentanyl hidden at the property at which time Gamble stated that he saw that the police K9 did not find it so he did not tell Agents where the Fentanyl was located and that he was scared to go back to prison. Gamble then told Agents that there was more fentanyl located in the property and would show Agents were it was located.").

Without, therefore, any indicia of physical coercion or high-pressure psychological interrogation techniques—*i.e.* questioning of prolonged duration, threats, promises, etc.—the Court concludes that, based on the totality of the circumstances and by a preponderance of the evidence, Mr. Gamble's statements to police were not coerced.  As such, Mr. Gamble's Motion to Suppress, as it relates to the issue of whether his statements were coerced, will be DENIED.

**5.      The Second Warrant is Not Tainted by Either the First Warrant or Mr. Gamble's Statements**

Finally, Mr. Gamble asserts that "[b]ecause the second search warrant is 'causally linked' with [the] illegal first search warrant through Mr. Gamble's statement, the fruits of the second warrant must also be suppressed."  ECF No. 70 at 14–15.  Having already determined that the first search warrant was sufficiently supported by probable cause, and having found that Mr. Gamble's statements were not coerced, the Court concludes that Mr. Gamble's arguments as to the second warrant are meritless.  Accordingly, his Motion to Suppress as to that issue will also be DENIED.

**6.      Summary**

Mr. Gamble's Motion to Suppress, ECF No. 70, will be DENIED in full.  First, Mr. Gamble has not set forth a sufficient dispute of material fact so as to warrant the Court conducting an evidentiary hearing.  Next, the information contained in the affidavit supporting the first search warrant provided a substantial basis for the issuing magistrate to conclude that there was a fair probability that evidence of drug trafficking—including drugs, drug paraphernalia, and firearms—would be found at Mr. Gamble's residence.  Finally, in view of the totality of the circumstances, Mr. Gamble's statements to law enforcement were not coerced.  As such, the Court need not address the United States' argument with respect to executing officer's good faith reliance on the first search warrant.  *See* ECF No. 74 at 28–30.

**III.    Conclusion**

For the reasons set forth above, the Court resolves Mr. Gamble's pretrial Motions as follows:

1.    Motion to Produce Evidence the Government Intends to Use under Federal Rules of Evidence 404(b) and 609, *see* ECF No. 62, is GRANTED IN PART and DENIED IN PART;

2.     Motion to Reveal Identity of Confidential Information, *see* ECF No. 67 (ECF No. 63), is DENIED;

3.     Motion to Produce Exculpatory Evidence and Impeachment Evidence, *see* ECF No. 68 (ECF No. 64), is DENIED AS MOOT;

4.     Motion for Severance of Count One from Counts Two and Three, *see* ECF No. 65, is DENIED;

5.     Motion for Discovery, *see* ECF No. 69, is DENIED WITHOUT PREJUDICE; and

6.     Motion to Suppress Evidence and Statements, *see* ECF No. 70 (ECF No. 66), is DENIED.

IT IS SO ORDERED.


DATED this 21st day of July, 2022.


BY THE COURT:


/s/Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record